UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ALBERT BRADLEY,

Plaintiff,

v.          4:14-cv-165

OFFICER CHRISTOPHER TUCKER and JOHN & JANE DOES 1-20 in their personal capacities as law enforcement officers of the
state and federal governments,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court are Officer Christopher Tucker's ("Defendant") Motion to Dismiss, ECF No. 6, and the Magistrate Judge's Report and Recommendation ("R & R") recommending dismissal of Albert Bradley's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 41.1(b), ECF No. 21. Plaintiff has filed a Response to Defendant's Motion to Dismiss, ECF No. 10, and an objection to the R & R, ECF No. 24.

For the reasons set forth below, the Court declines to adopt the Magistrate Judge's R & R, ECF No. 21, but **GRANTS** Defendant's Motion to Dismiss, ECF No. 6.

### II. BACKGROUND

Plaintiff works in the parts department at Tico, Inc. ("Tico"), which is located at the Georgia Ports Authority in Garden City, Georgia. ECF No. 1 at 2. On August 20, 2013, Plaintiff was returning to Tico after running an errand to pick up an auto part. *Id.* While en route, Plaintiff's dispatcher radioed him to return. *Id.*

Upon Plaintiff's arrival at Tico an unidentified, armed police officer asked Plaintiff for identification. *Id.* at 2-3. Plaintiff provided the officer a photo ID and the officer asked if Plaintiff owned a particular vehicle parked in the Tico lot. *Id.* at 3. Plaintiff stated that he did. *Id.* The unidentified officer then asked if he could search Plaintiff's vehicle. *Id.* Plaintiff denied permission. *Id.*

The unidentified officer then told Plaintiff to accompany him to Plaintiff's car, which was parked about a quarter mile away. *Id.* When the officer and Plaintiff arrived at Plaintiff's car, Defendant approached Plaintiff and told him that his dog had alerted on Plaintiff's car. *Id.* Plaintiff denied that there were drugs in his car. *Id.* Another unidentified officer then told Plaintiff to "spread them" and frisked Plaintiff. *Id.* During the frisk, the unidentified officer removed Plaintiff's hat, ran his fingers through Plaintiff's hair, thoroughly patted down Plaintiff's person, and had Plaintiff remove his boots so that they could be searched. *Id.*

Finding no contraband on Plaintiff's person, Defendant and other unidentified officers searched Plaintiff's car. *Id.* at 4. The search included the engine compartment, passenger compartment, and the trunk. *Id.* This search, however, produced no drugs or contraband. *Id.* Plaintiff alleges that law enforcement made no police report of the incident, but the officer in charge of the Savannah/Chatham

Metro K-9 unit confirmed that the unit sent Defendant to the Georgia Ports Authority on August 20, 2013, pursuant to a Customs and Border request for a drug dog. *Id.* at 4-5.

On August 1, 2014, Plaintiff filed his Complaint seeking relief under 42 U.S.C. §§ 1983, 1985(1)-(2), the Fourth and Fourteenth Amendments to the United States Constitution, Georgia state law, and the Federal Torts Claims Act. ECF No. 1 at 1. On that same date, the Court issued a General Order detailing the requirements of Federal Rule of Civil Procedure 26(f). ECF No. 3. Plaintiff did not serve Defendant until September 12, 2014, *see* ECF No. 4, and on October 30, 2014, Defendant moved to dismiss Plaintiff's Complaint, ECF No. 6.

On November 10, 2014, Defendant filed "his portion of" the required Rule 26(f) Conference Report. ECF No. 9. But Plaintiff's Counsel failed to cooperate in the preparation of the Report. *Id.* Therefore, on November 13, 2014, the Magistrate Judge ordered Plaintiff "to show cause . . . why his case should not be dismissed for failure to participate in the Rule 26(f) conference and assist in the preparation of a proposed discovery plan." ECF No. 11.

Plaintiff's Counsel responded to the Magistrate Judge's Order, citing a lack of experience in federal court and an insufficient understanding of the Federal Rules of Civil Procedure and this Court's Local Rules as the cause for his failure to cooperate in the preparation of the Rule 26(f) report. ECF No. 16. The Magistrate Judge found that Plaintiff failed to show cause and recommended dismissal of Plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 41.1(b). ECF No. 21 at 2-3.

### III. STANDARD OF REVIEW

The matters before the Court are subject to different standards of review. The Magistrate Judge's R & R triggers scrutiny under Federal Rule of Civil Procedure 41(b), while Defendant's Motion to Dismiss implicates Rule 12(b)(6) analysis.

#### A. Rule 41(b)

Dismissal of a complaint pursuant to Rule 41(b) "is an extreme sanction that may be properly imposed *only* when: '(1) a party engages in a clear pattern of delay or willful contempt . . . ; and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-38 (11th Cir. 2005) (quoting *World Thrust Films, Inc. v. Int'l Family Entm't, Inc.*, 41 F.3d 1454, 1456 (11th Cir. 1995)). The Eleventh Circuit "rigidly require[s] the district courts to make these findings precisely '[b]ecause the sanction of dismissal with prejudice is so unsparing' and [the Court of Appeals] strive[s] to afford a litigant his or her day in court, if possible." *Id.* at 1339 (first alteration in original) (quoting *Mingo v. Sugar Cane Growers Co-op. of Fla*, 864 F.2d 101, 103 (11th Cir. 1989)).

#### B. Rule 12(b)(6)

In considering a Federal Rule of Civil Procedure 12(b)(6) motion, all facts in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court,

however, is not limited to the four corners of the pleadings, rather a proper review of a motion to dismiss "requires the reviewing court to draw on its judicial experience and common sense." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Iqbal*, 556 U.S. at 678 (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Yet, "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original).

In *Iqbal*, the Court further explained the required level of specificity:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. at 678 (internal citation and quotation omitted).

In order to assess the plausibility of a complaint, a court must be mindful of two principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, *Iqbal* suggests a "two-pronged approach" to assessing a defendant's Rule 12(b)(6) motion: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679)). Importantly, however, the "plausibility standard is not akin to a 'probability requirement' at the pleading stage." *Id.* at 1289. Instead, it "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements" of a plaintiff's claim for relief. *See McCray v. Potter*, 263 F. App'x 771, 773 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## IV. ANALYSIS

The Court will now take up the substance of the Magistrate Judge's R & R before turning to the merits of Defendant's Motion to Dismiss.

### A. The Magistrate Judge's R & R

The Court cannot adopt the Magistrate Judge's R & R. As set forth above, dismissal pursuant to Rule 41(b) requires that the Court make specific findings that lesser sanctions would not sufficiently address a party's contempt. *See Betty K Agencies, Inc.*, 432 F.3d at 1338. Here, the Magistrate Judge made no such findings regarding the propriety of lesser sanctions.

3

Even if the Magistrate Judge had made such findings, however, the Court still could not adopt the recommendation that Plaintiff's Complaint be dismissed pursuant to Rule 41(b).

Rule 41(b) requires a "clear record of delay or willful conduct . . . ." *See id.* at 1339 (citing cases). Here, the ground on which the Magistrate Judge's R & R relies for dismissal is Plaintiff's Counsel's apparent lack of competence and negligent failure to abide by Court orders. *See* ECF No. 21. However, lack of competence and negligence simply cannot support a finding of the kind of contemptuous conduct necessary for dismissal under Rule 41(b). *See McKelvey v. AT&T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986) ("A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of willful delay; *simple negligence does not warrant dismissal.*" (emphasis added)). This is especially so where, as here, the negligence leading to delay is attributable to Plaintiff's Counsel, rather than to Plaintiff. *See Betty K Agencies, Ltd.*, 432 F.3d at 1338 ("[T]he harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable."); *see also McKelvey*, 789 F.2d at 1521 (finding that the district court abused its discretion when it dismissed a plaintiff's complaint after the plaintiff's counsel negligently failed to respond to the court's order to show cause).

Accordingly, the Court declines to adopt the Magistrate Judge's R & R.

## B. Defendant's Motion to Dismiss

The Court turns now to the merits of Defendant's Motion to Dismiss. In his Motion to Dismiss, Defendant argues that there are no factual allegations that he participated in the actions giving rise to the alleged false arrest, the alleged unlawful search of Plaintiff's person, the alleged battery, the alleged sexual battery, the alleged invasion of privacy, or the alleged intentional infliction of emotional distress. *See* ECF No. 6 at 2. Defendant also argues that Plaintiff has failed to state a claim as to Defendant's involvement in the allegedly unlawful search of Plaintiff's automobile and Defendant's involvement in the alleged conspiracy to conceal the identities of the John and Jane Does involved in the events giving rise to Plaintiff's Complaint. *Id.* at 3-5.

Plaintiff's Response does not address Defendant's arguments with regard to the false arrest, the unlawful search of Plaintiff's person, the battery, the sexual battery, the invasion of privacy, or the intentional infliction of emotional distress counts, save for two conclusory allegations. *See* ECF No. 10 at 1, 8.[1] An independent

---

[1] One of Plaintiff's conclusory allegations reads: "It is respectfully submitted there is more than sufficient facts and evidence to show Defendant Tucker was not only the direct and proximate cause of the *rape* of Albert Bradley and that the defendant actually took part in the physical search of Albert's automobile." ECF No. 10 at 8 (emphasis added). The inclusion of such an inflammatory charge in Plaintiff's Response to Defendant's Motion to Dismiss is beyond curious. Plaintiff's Complaint plainly alleges no facts tending to show that Defendant or the unnamed John and Jane Does raped Plaintiff. But "[a]lmost all compositions contain words, which, taken in their rigorous sense, would convey a meaning different from that which is obviously intended." *M'Culloch*

4

review of Plaintiff's Complaint reveals that the only factual allegations in the Complaint relating to Defendant's alleged involvement are: (1) that a drug dog "hit" on Plaintiff's automobile and Defendant "was the K-9 handler," ECF No. 1 at 2; (2) that Defendant told Plaintiff that the drug dog hit on Plaintiff's car, *id.* at 3, 6; (3) that Defendant participated in the search of Plaintiff's car, *id.* at 4, 7; and (4) that Defendant was somehow involved in a conspiracy to cover up the identities of the officers involved in the search of Plaintiff's automobile, *see id.* at 8-9.

Therefore, the Court finds that only the counts related to the search of Plaintiff's automobile and the alleged conspiracy apply to Defendant. The Court will now take up the sufficiency of those counts, starting with the automobile search before turning to the alleged conspiracy.

### 1. Counts V and VI: Unlawful Search of Automobile[2]

In response to Plaintiff's 42 U.S.C. § 1983 claims arising out of the allegedly unlawful search of his automobile, Defendants assert, however inartfully, that qualified immunity applies, because the search of Plaintiff's automobile "was expressly permitted by law." ECF No. 6 at 3 (citing 33 C.F.R. §§ 6.04-7, -11). Plaintiff responds, arguing that because Defendant could have obtained a warrant and "the search itself was conducted in an unreasonable manner," Defendant violated clearly established law. *See* ECF No. 10 at 4.[3]

With these general arguments in mind, the Court turns to its own discussion of the applicability of the qualified immunity test. Under the doctrine of qualified immunity, an official performing discretionary functions is entitled to immunity "unless he both (1) violates clearly established law and (2) was aware or reasonably should have been aware that he was doing it." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014).

### a. Discretionary Function

In order for qualified immunity to apply, it must be established that Defendant was performing discretionary functions. The Eleventh Circuit has explained that courts are to make this determination, not by "focusing on whether the acts in question involved the exercise of actual discretion," but rather by asking "whether [the acts in question] are of a type that fell within the

---

*v. Maryland*, 17 U.S. 316, 414 (1819) (Marshall, C.J.). "Such is the character of human language, that no word conveys to the mind, in all situations, one single definite idea; and nothing is more common than to use words in a figurative sense." *Id.*

The Court does not believe that Plaintiff intended to allege that the officers involved in the search of his person and his automobile literally raped him, but rather intended to use the word in a figurative sense. Such incendiary word choice is unwise and Plaintiff would do well to measure his words more carefully.

[2] Plaintiff numbers these counts under Paragraphs 8A and 8B. ECF No. 1 at 6-7. For clarity's sake, the Court will treat them as separate Counts.

[3] The parties' briefing is, in a word, underwhelming. Defendant's Motion to Dismiss, Plaintiff's Response, and Defendant's Reply cover a total of seventeen pages and cite to relevant authority only nine times. *See generally* ECF Nos. 6, 10, 18. Indeed, neither Defendants, nor Plaintiff, identify the doctrine of qualified immunity by name, but rather raise arguments sounding in qualified immunity.

Efficiency in argument is greatly helpful to the Court. Efficiency at the expense of argument is greatly unhelpful to the Court. The parties here have chosen the latter option.

employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). To answer this question, the Court "ask[s] whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.*

"[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged unconstitutional infirmity, would have fallen with his legitimate job description." *Id.* at 1266. To pass the second step of the discretionary function test, the defendant must have been executing a "job-related function . . . in an authorized manner"—i.e., the defendant must have been exercising powers from his authorized "arsenal." *Id.* at 1266-67.

It is clear that conducting a search for contraband was within Defendant's legitimate job function as a Savannah Chatham Police Officer. Further, the means by which he conducted the search fell clearly within the "arsenal" granted to him as a K-9 handler. Therefore, as "[a]n officer conducting a search," Defendant "is entitled to qualified immunity [unless] clearly established law . . . show[s] that the search violated the Fourth Amendment." *See Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009).

### b. Clearly Established Law

Having found that Defendant was acting within his discretionary authority, Plaintiff's Complaint can withstand Defendant's Motion to Dismiss only if "plaintiff's allegations state a claim of violation of clearly established law." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (concluding that absent such allegations, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"); *see also Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000) (stating that where qualified immunity is raised at the motion to dismiss stage, "the plaintiff must carry the burden of establishing that the defendant violated clearly established law"); *Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000) ("Defendants are entitled to qualified immunity in a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right."). To determine whether or not a right was clearly established in this case, the Court looks to the decisions of the Supreme Court, the Eleventh Circuit, and the Supreme Court of Georgia. *See Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014).

Plaintiff's Complaint falls far short of alleging that Defendant violated clearly established law. Plaintiff's allegations as to Defendant are that: (1) Defendant's search of Plaintiff's automobile was unconstitutional because Defendant "had time and opportunity to contact a magistrate and obtain a search warrant"; and (2) Defendant's search of Plaintiff's automobile was unreasonable because Plaintiff's automobile was "ransacked" when the "search should have been limited to the portion of the automobile where the K-9

allegedly alerted." ECF No. 1 at 6-7.[4] Such allegations betray Plaintiff's lack of understanding of Fourth Amendment first principles.

Plaintiff generalizes that because "there was more than sufficient time to obtain a search warrant" and Plaintiff's automobile was immobile, exigent circumstances did not exist to support the warrantless search of Plaintiff's vehicle. *See* ECF No. 10 at 4. "But to generalize is to omit, and, in this instance, to omit" fundamental Fourth Amendment doctrines. *See Donnell v. Herring-Mall-Marvin Safe Co.*, 208 U.S. 267, 273 (1908) (Holmes, J.).

In 1925, the Supreme Court held that if a warrantless search is "made upon probable cause . . . that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid," *Carroll v. United States*, 267 U.S. 132, 149 (1925), thus establishing what has become known as the "automobile exception." *See Maryland v. Dyson*, 527 U.S. 465, 466 (1999).[5] To be sure, "[t]he exception recognized in *Carroll* is unquestionably one that is specifically established and well delineated." *United States v. Ross*, 456 U.S. 798, 825 (1982) (internal quotation marks omitted). This exception provides that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

"Readily mobile" under the automobile exception, however, is a broad term. Indeed, a vehicle need not be readily mobile in fact to justify a warrantless search supported by probable cause. Rather, the "automobile exception" is founded on a vehicle's "inherent mobility." *See Ross*, 456 U.S. at 830 (concluding that "the inherent mobility of the vehicle . . . is the principal basis for the Court's automobile exception to the warrant requirement"). Thus, "[i]t is . . . clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away . . . during the period required for the police to obtain a warrant." *See Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *see also United States v. Watts*, 329 F.3d 1282, 1286 (11th

---

[4] Plaintiff does not appear to take issue with the dog sniff itself. Rather, Plaintiff's focus is on the subsequent search of his automobile. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). To the extent that Plaintiff's Complaint can be read as challenging the constitutionality of the dog sniff, "the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view—. . . generally, does not implicate legitimate privacy interests." *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (citation omitted) (quoting *United States v. Place*, 462 U.S. 696, 707 (1983)). Though Plaintiff does allege that the search of his car produced no contraband, Plaintiff "does not suggest that an erroneous alert, in and of itself, reveals any legitimate private information." *Id.* Thus, the dog sniff did "not 'compromise any legitimate interest in privacy' and [was] not a search subject to the Fourth Amendment." *Id.* at 408 (quoting *Jacobsen*, 466 U.S. at 123).

[5] The "automobile exception" is not really an exception to the warrant requirement at all. Rather, it is a term of art used to denote the "constitutional difference between houses and cars . . . that may in some cases justify a warrantless search." *See South Dakota v. Opperman*, 428 U.S. 364, 382 (1976).

7

Cir. 2003) ("All that is necessary to satisfy [the readily mobile] element is that the automobile is operational.").

Plaintiff's arguments that Defendant should still have obtained a warrant miss the mark. First, despite Plaintiff's contention otherwise, under the Supreme Court's "established precedent, the 'automobile exception' has no separate exigency requirement." *Dyson*, 527 U.S. at 466. Second, Plaintiff's reliance on the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009) is both incorrect and inapposite. Plaintiff's reliance on *Gant* is inapposite, because *Gant* dealt not with the "automobile exception" to the warrant requirement, but with searches of automobiles incident to lawful arrests. 556 U.S. at 335, 351. Plaintiff's reliance on *Gant* is incorrect, because the Court in *Gant* did not, as Plaintiff contends, invariably require a warrant to search an automobile after its driver had been secured. Rather, under *Gant*, the police may search a vehicle incident to lawful arrest when "the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351 (emphasis added). Thus, contrary to Plaintiff's assertion that *Gant* "expanded the rights of owners of automobiles by requiring police to get a search warrant to search an auto after the driver of the auto had been removed from the auto and secured," ECF No. 10 at 4, the decision does not call into doubt the continued vitality of the "automobile exception" to the warrant requirement.

Applying the "automobile exception" to Defendant's search of Plaintiff's automobile, the warrant requirement was excused if (1) Defendant had probable cause to search Plaintiff's automobile and (2) if Plaintiff's automobile was readily mobile— i.e., if Plaintiff's automobile was operational. There is no allegation that Plaintiff's automobile was not operational at the time of the allegedly unlawful search. All that is alleged is that the vehicle was immobile in that Plaintiff was not going to drive the automobile anywhere at the time of the search, *see* ECF No. 1 at 6, which is irrelevant to the Court's Fourth Amendment inquiry. Accordingly, so long as Defendant's search of Plaintiff's vehicle was based on probable cause, the search of Plaintiff's vehicle did not violate clearly established law.

The Eleventh Circuit has "long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'" *United States v. Tamari*, 454 F.3d 1259, 1265 (11th Cir. 2006) (quoting *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993)). Georgia courts have found the same. *See, e.g., Prado v. State*, 701 S.E.2d 871, 880 (Ga. Ct. App. 2010) ("A trained and certified drug detection dog's alert on a vehicle provides probable cause to believe that contraband is present therein."). Probable cause based on a dog alert still requires sufficient indicia of reliability, but "training of a dog alone is sufficient proof of reliability." *See United States v. Sentovich*, 677 F.2d 834, 838 n.8 (11th Cir. 1982); *see also Florida v. Harris*, 133 S. Ct. 1050, 1058 (2013) ("The question—similar to every inquiry into probable cause—is

8

whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime."). Thus, even where a dog alerts to the presence of contraband, the determination of probable cause "is not reducible to 'precise definition or quantification,'" but depends on "the totality of the circumstances." *Harris*, 133 S. Ct. at 1055 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

But at the motion to dismiss stage, once a defendant raises the issue of qualified immunity, the burden is on the plaintiff to marshal facts sufficient to show a plausible violation of clearly established law. *See Forsyth*, 472 U.S. at 526; *Chapman*, 208 F.3d at 942. Plaintiff's Complaint, however, does not allege facts to call into question the reliability of Defendant's dog's alert. Plaintiff does not allege that Defendant's drug dog was inadequately trained or that other circumstances negated the reliability of the dog's alert. *See Harris*, 133 S. Ct. at 1057-58 ("[E]ven assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions."). In his Response to Defendant's Motion to Dismiss, however, Plaintiff appears to allege that the fact that Defendant's search turned up no drugs "indicates at least negligence in training of . . . [Defendant's] K-9." *See* ECF No. 10 at 2.

But the "Court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Further, even assuming *arguendo* that Defendant's drug dog was negligently trained, the Court's qualified immunity analysis would be unchanged. This is because Defendant "need not have actual probable cause, but only 'arguable' probable cause" for qualified immunity to apply. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994). This standard permits law enforcement officers to make reasonable mistakes with regard to the existence of probable cause without being held personally liable. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).

A review of the entire record before the Court reveals no allegation that, if Defendant's drug dog was negligently trained, Defendant knew of the dog's unreliability. Thus, even viewing all of Plaintiff's allegations in a light most favorable to his case, the Court still can only assume that Defendant believed his drug dog was reliable. "After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risk or wasting limited time and resources." *See Harris*,

133 S. Ct. 1057. The Court therefore concludes that Plaintiff has failed to sufficiently allege that Defendant did not have at least arguable probable cause to conduct a search of Plaintiff's automobile. Accordingly, Defendant is entitled to qualified immunity as to Count V of Plaintiff's Complaint.

Moving on to Count VI, which alleges that because the search of Plaintiff's automobile exceeded the scope of the dog alert, the search was unreasonable in violation of the Fourth Amendment. *See* ECF No. 1 at 7. Having found that Defendant had at least arguable probable cause to search Plaintiff's vehicle for drugs, disposal of Plaintiff's allegations regarding the reasonableness of the search is a simple exercise.

Under Supreme Court precedent, the automobile exception "merely relaxed the requirements for a warrant on grounds of practicability[;] [i]t neither broadened nor limited the scope of a lawful search based on probable cause." *Ross*, 456 U.S. at 820. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *Id.* at 820-21.

Plaintiff, however, alleges, with no support, "that the search should have been limited to the portion of the automobile where the K-9 allegedly alerted." *See* ECF No. 1 at 7. The Fourth Amendment simply does not require a warrantless search of an automobile to be so limited.[6]

The dog alert provided Defendant with probable cause to search Plaintiff's automobile for drugs. The scope of that search "is defined by the object of the search and the places in which there is probable cause to believe it may be found." *Ross*, 456 U.S. at 824. Though prior to the alert, Plaintiff certainly had an interest in not having law enforcement officers "ransack[]" his car, *see* ECF No. 1 at 4, that "interest[] must yield to the authority of a search . . . which—in light of *Carroll*—does not itself require the prior approval of a magistrate." *See Ross*, 456 U.S. at 823.

Accordingly, because Defendant had at least probable cause to search Plaintiff's automobile for drugs, he was permitted to thoroughly search the entire automobile and any area or container which could contain the object of his search. *See Ross*, 456 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") Defendant is therefore entitled to qualified immunity as to Count VI of Plaintiff's Complaint.

---

[6] Had the dog alerted to a specific container in Plaintiff's car, the scope of the search would be limited to that container. *See California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment."). But Plaintiff does not allege that the dog alerted to a specific container.

10

## 2. Count IX: Conspiracy[7]

In Count IX of his Complaint, Plaintiff alleges a conspiracy aimed at preventing him from exercising his rights to justice and his right to prosecute this action in court. *See* ECF No. 1 at 8. The Court construes this inartfully pleaded count as alleging a conspiracy to interfere with civil rights under 42 U.S.C. § 1985.[8] Under 42 U.S.C. § 1985(2) "interference with the right of court access by state agents who intentionally conceal true facts about a crime may be actionable as a deprivation of constitutional rights . . . ." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). However, "the constitutional right of access to courts . . . is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* Thus, in order to allege that Defendant and other unnamed parties conspired to deny him access to the Court, Plaintiff "must identify within his complaint, a 'nonfrivolous, arguable underlying claim.'" *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) (quoting *Harbury*, 536 U.S. at 415) (internal quotation marks omitted). It is doubtful that Plaintiff's Complaint alleges any nonfrivolous underlying claims.

Nevertheless, it is unnecessary to consider the merits of those alleged underlying claims because Plaintiff's Complaint fails to properly allege the existence of a conspiracy.

An allegation of a conspiracy is necessary to sustain a cause of action under 42 U.S.C. § 1985(2). *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976) (stating that proof of "a conspiracy" is "an essential element" of a Section 1985 action). A conspiracy "requires the combination of two or more persons acting in concert" and "[a] plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (quotations omitted). Indeed, "the linchpin for conspiracy is agreement, which presupposes communication." *See Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). "[M]ore than mere conclusory notice pleading is required" in civil rights conspiracy cases and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *see also Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) ("To survive a motion to dismiss a Section 1985 claim, plaintiff must set forth more than conclusory allegations of an agreement. To state sufficient facts to support an agreement plaintiff should allege the existence of any events, conversations, or documents indicating there was an agreement between the defendants to violate his rights." (citations omitted)).

---

[7] Plaintiff's Conspiracy cause of action is set forth under Paragraph 11 of his Complaint. *See* ECF No. 1 at 8. For continued clarity, the Court will identify the Conspiracy cause of action as Count VIII.

[8] Plaintiff styles his Complaint as seeking recovery under both 42 U.S.C. § 1983 and 42 U.S.C. §§ 1985(1)-(2). ECF No. 1 at 1.

11

Plaintiff alleges that the object of the alleged conspiracy was "to conceal the identities of the[] policemen and their agencies to prevent [Plaintiff] access to the courts so that he may bring an action to seek redress for the wrongs that he has sustained . . . ." ECF No. 1 at 9. But Plaintiff's Complaint fails to even set forth a conclusory allegation that Defendant entered into an agreement with any other defendant aimed at achieving the alleged conspiracy's illicit end. There also is no allegation that Defendant ever communicated with the other defendants for the purpose of concealing the identity of the officers involved. Indeed, there is no allegation that *any* of the other, unidentified defendants entered into agreements or communicated with each other in order to conceal the identity of the officers.

To be sure, Plaintiff may rely entirely on circumstantial evidence to prove the existence of an agreement and Defendant's participation in the alleged conspiracy. *See United States v. Houser*, 754 F.3d 1335, 1349 (11th Cir. 2014) (reviewing a criminal conviction); *see also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence."); *Palmer v. Morris*, 316 F.2d 649, 650 (5th Cir. 1963) ("It is common knowledge that a conspiracy is rarely established by direct evidence. Rather it is usually proved by indirect or circumstantial evidence . . . ."). But the facts on which Plaintiff relies for his inference of conspiracy—i.e., failure to identify the officers involved when responding to requests to do so—are just as consistent with lawful behavior—e.g., lack of knowledge—as they are with an unlawful conspiracy. Plaintiff's Complaint even gives reasons to explain why the officers involved could not be identified: "[T]here was no police report made of this incident." ECF No. 1 at 4. He does not allege, however, that failure to make a police report was an act in furtherance of, or otherwise evidence of, a conspiracy to conceal the identities of those officers involved. Thus, absent specific allegations of a preceding agreement, Plaintiff has not "nudged [his civil rights conspiracy] claim[] across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 557, 570 (considering a conspiracy claim under Section 1 of the Sherman Act and concluding that "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action"); *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (considering a Section 1983 conspiracy claim and concluding that plaintiff's "facts, when 'placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action'" (alterations in original) (quoting *Twombly*, 550 U.S. at 557)).

As such, the Court finds that Plaintiff has failed to plead sufficient facts from which the Court could reasonably infer that Defendant conspired with law enforcement agencies to conceal the identities of the other officers involved so as to deny Plaintiff access to court. Count IX of

Plaintiff's Complaint, therefore, fails to state a claim for a civil rights conspiracy.

## V. CONCLUSION

The Court has declined to adopt the Magistrate Judge's R & R, ECF No. 21. In considering Defendant's motion to dismiss, the Court has found that Plaintiff's Complaint advanced claims against Defendant under only Counts V, VI, and IX. The Court concluded that those Counts fail to state a claim against Defendant. Plaintiff has failed to plead facts sufficient to overcome Defendant's invocation of qualified immunity on Counts V and VI. And, as to Count IX, Plaintiff has failed to sufficiently plead the existence of a civil rights conspiracy. Therefore, the Court *GRANTS* Defendant's Motion to Dismiss, ECF No. 6.

This Order leaves Plaintiff's lawsuit with no identified defendants. Having found that the search at issue in Counts V and VI was supported by at least arguable probable cause and was conducted in a manner reasonable under the Fourth Amendment, those Counts cannot survive as to any of the unnamed defendants. Further, having found that Plaintiff failed to sufficiently allege the existence of an agreement to sustain a civil rights conspiracy cause of action, Count IX, as pleaded, simply cannot survive as to the unnamed defendants. What is left then, are claims for false arrest, unlawful search of Plaintiff's person, battery, sexual battery, invasion of privacy, and intentional infliction of emotional distress. Though the sufficiency of those claims was not at issue in this Order, the Court cannot ignore the near frivolity of the claims.

Because no defendant has been called to answer to Plaintiff's remaining claims, the Court will *DISMISS* Plaintiff's Complaint, ECF No. 1, as to the unidentified defendants *WITHOUT PREJUDICE*. However, as presently drafted, Plaintiff's Complaint exhibits a lack of understanding of elementary principles of search and seizure law and the requirements for recovery under 42 U.S.C. § 1983. Thus, Plaintiff's Counsel should carefully consider the facts giving rise to Plaintiff's lawsuit and whether those facts entitle Plaintiff to relief before refiling in this Court.

This 6 day of January 2015.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA